UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KIRSTYN INDGJER,

               Plaintiff,

      v.

NOYES MEMORIAL HOSPITAL,

               Defendant

**DECISION AND ORDER**

25-CV-6031 FPG CDH

---

## <u>BACKGROUND</u>

Plaintiff Kirstyn Indgjer ("Plaintiff") is a licensed Certified Registered Nurse Anesthetist ("CRNA") who formerly performed services for defendant Noyes Memorial Hospital ("Defendant"). (*See* Dkt. 35 at ¶¶ 7-8; Dkt. 37 at ¶ 7).[1] Plaintiff has sued Defendant for: sex discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; sex discrimination, domestic violence status discrimination, and hostile work environment in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*; retaliation in violation of Title VII and the NYSHRL; and failure to provide a reasonable accommodation under the NYSHRL. (Dkt. 35 at ¶¶ 22-57).

---

[1]     Plaintiff claims that she was an employee of Defendant, while Defendant states that she was an independent contractor. (*Compare* Dkt. 35 at ¶¶ 7, 25, 37, *with* Dkt. 37 at ¶¶ 7, 25, 37).

Plaintiff alleges that she is a victim of domestic violence and that in February of 2023, her abuser called the nursing supervisor at Defendant and claimed that Plaintiff had stolen ketamine, was using cocaine and "mushrooms" at work, and was "stealing drugs." (*Id.* at ¶¶ 10-14). Plaintiff further alleges that following this report, she "was not interviewed or given a chance to give any information" and was "asked to clean out her locker and give her badge back[.]" (*Id.* at ¶¶ 16-17). Plaintiff acknowledges that there were "discrepancies found during her shift in medication," but asserts that these discrepancies were due to "usage and pulling while not documenting," which "is common across all medical staff." (*Id.* at ¶ 16). Plaintiff further alleges that male employees of Defendant were the subject of "more serious allegations," including of sexual misconduct and patient abandonment, but were not subject to disciplinary action. (*Id.* at ¶ 19). Defendant acknowledges receiving a report that Plaintiff was allegedly stealing ketamine but denies Plaintiff's account of the events that followed. (Dkt. 37 at ¶¶ 14-21).

This matter has been referred to the undersigned for all non-dispositive pretrial matters. (Dkt. 38). On May 11, 2026, Defendant sent the Court a letter regarding several discovery issues, including a dispute regarding the terms of a proposed protective order. The Court scheduled a discovery conference for May 20, 2026, which was subsequently rescheduled for May 28, 2026, at the request of Plaintiff's counsel. (Dkt. 49; Dkt. 50). Plaintiff sent the Court a letter setting forth her position on the discovery disputes in advance of the conference.

At the discovery conference, the Court determined that further written submissions on the issue of the proposed protective order were necessary. (Dkt. 51).[2] The parties submitted their further submissions on June 24, 2026. (Dkt. 59; Dkt. 60).

The Court's resolution of the parties' dispute over the terms of the proposed protective order is set forth below. A protective order that conforms with the Court's determination will follow.

## DISCUSSION

### I.    Legal Standard

A federal court has "'broad discretion to manage' or otherwise limit discovery based on the circumstances." *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 68 (2d. Cir. 2003)). Consistent with such authority, Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). "A protective order may require that certain material obtained in discovery be kept confidential or disclosed only to attorneys." *Lively v. Wayfarer Studios LLC*, No. 24-CV-10049, 2025 WL 815364, at *1 (S.D.N.Y. Mar. 13, 2025).

---

[2]    The Court anticipated that the parties' additional submissions would be formal submissions filed on the docket, because the Court had advised that it would resolve the parties' dispute based thereon. (*See* Dkt. 51). The parties instead submitted letters directly to the undersigned's chambers. To ensure a proper record, the Court will file copies of these letters on the docket contemporaneously with the filing of this Decision and Order.

"A request for a protective order must be based upon particular and specific facts demonstrating good cause." *Pflanzer v. Abrahamson*, No. 18 CV 2676(WFK)(LB), 2021 WL 9566841, at *2 (E.D.N.Y. Sept. 30, 2021) (quotation omitted). Even where the parties are in agreement that a protective order should be entered, the Court "must independently determine if 'good cause' exists." *Kelly v. Jefferies Grp., Inc.*, No. 17-CV-2432(ALC)(KNF), 2018 WL 8221524, at *3 (S.D.N.Y. Oct. 25, 2018) (citation omitted).

## II.    Terms of the Protective Order

The parties generally agree that a protective order should be entered in this matter. Having carefully reviewed the parties' submissions, the Court finds that there is good cause for entry of a protective order. The nature of Plaintiff's claims necessarily means that discovery in this matter will involve highly sensitive materials. Such materials will likely include information related to Plaintiff's allegation that she is a victim of domestic abuse, information related to Plaintiff's work for Defendant as a CRNA, including her access to and handling of prescription medications, and information related to Plaintiff's allegation that male comparators engaged in sexual misconduct and patient abandonment in the workplace and were not disciplined. (*See* Dkt. 35 at ¶¶ 10-21). The disclosure of these types of materials implicates important privacy interests, including those of non-parties to this litigation. *See, e.g., Metcalf v. Yale Univ.*, No. 15-CV-1696 (VAB), 2017 WL 627423, at *5-6 (D. Conn. Feb. 15, 2017) (noting that the defendant's "arguments regarding the larger privacy and confidentiality concerns surrounding the potential disclosure

of documents concerning the investigation of complaints of sexual misconduct are well taken" and imposing restrictions "in order to protect the privacy of nonparties to this case"); *Chase v. Nodine's Smokehouse, Inc.*, No. 3:18-CV-00683 (VLB), 2019 WL 2385602, at \*5 (D. Conn. June 6, 2019) ("federal courts . . . recognize the interests of victims . . . in privacy and confidentiality of sensitive records"); *Lan v. Time Warner, Inc.*, No. 11-CIV-2870 ATJCF, 2014 WL 13109443, at \*2 (S.D.N.Y. June 20, 2014) ("Medical files and records are generally characterized as private information appropriate for confidentiality orders.").

The parties have also agreed in many respects as to the terms of a proposed protective order. (*Compare* Dkt. 59-1, *with* Dkt. 60-1). However, Plaintiff has taken the position that any protective order should contain a provision stating, in sum and substance, that the terms of such order do not prevent the use of confidential material "for the purposes of this action." (*See* Dkt. 59-1 at ¶ 9; *see also id.* at ¶ 4(b) (providing a similar caveat for "any deposition transcript or pre-trial testimony")). Plaintiff argues that this addition is necessary to ensure that the parties have an adequate mechanism for seeking judicial review of "incomplete, non-compliant, or improperly redacted discovery responses[.]" (Dkt. 59 at 2). Plaintiff also contends that protective orders should generally be limited to "control[ling] public exposure and collateral use" and not to "create a barrier to internal litigation use." (*Id.*). In support of these arguments, Plaintiff cites cases setting forth the standard under which judicial documents may be shielded from public disclosure. (*See id.* at 1-3).

- 5 -

Plaintiff's argument conflates the protection afforded to judicial documents with the appropriate standard for a protective order. "[C]onducting discovery is not undertaken as part of the public component of civil adjudication to which the presumption of public access to judicial proceedings and records attaches[.]" *Kelly*, 2018 WL 8221524, at *3 (quotation omitted). However, "the filing of documents in support of adjudicatory action stands on different footing." *Id*. (citation omitted). It is in determining whether a filing should be made available to the public that the Court must carefully weigh the presumption of access against any countervailing privacy concerns. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). "By contrast, materials exchanged in . . . civil discovery are generally viewed as outside the judicial function and therefore not presumptively accessible." *United States v. Avenatti*, No. (S1) 19 CR. 373 PGG, 2020 WL 70952, at *2 (S.D.N.Y. Jan. 6, 2020); *see In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 421 (E.D.N.Y. 2007) (noting that "materials that were exchanged by the parties in the discovery phase of th[e] litigation . . . play no role in the adjudication process"), *judgment entered sub nom. In re Zyprexa Litig.*, 2007 WL 669797 (E.D.N.Y. Mar. 1, 2007), *and aff'd sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010). As such, a provision broadly permitting the use of confidential materials for any purpose within the scope of the litigation (including during the discovery phase) sweeps well beyond what is required to protect public access to the adjudicatory process and comply with Second Circuit precedent.

Moreover, the undisputed terms of the proposed protective order state unequivocally that confidential discovery materials may be disclosed to the Court. (*Compare* Dkt. 59-1 at ¶ 6(a)(i), *with* Dkt. 60-1 at ¶ 6(a)(i)). The parties also agree—consistent with the law in this Circuit—that their designation of material as confidential will not have the effect of a ruling that such material in fact contains confidential information. (*Compare* Dkt. 59-1 at ¶ 8, *with* Dkt. 60-1 at ¶ 8). Plaintiff's concern that she would somehow be prevented from submitting discovery materials to the Court for consideration is thus misplaced. Under both parties' proposals, any party may submit confidential material to the Court for consideration, seeking an appropriate sealing order in compliance with Local Rule of Civil Procedure 5.3. (*Compare* Dkt. 59-1 at ¶ 10, *with* Dkt. 60-1 at ¶ 10). The additions proposed by Plaintiff do not add any clarity or additional protection in this regard.

Plaintiff's argument that a protective order is limited to "control[ling] public exposure and collateral use" of confidential information is unsupported by the law and inconsistent with the practices of federal courts across the nation. District courts routinely issue protective orders that limit the internal dissemination of confidential information exchanged during the course of discovery. Indeed, the Second Circuit has found that a protective order that limited disclosure of certain information to counsel only was "[o]n its face, . . . a proper attempt to balance the plaintiffs' desire for full disclosure of relevant information against the defendant's desire to preserve the privacy of its employees." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 601 (2d Cir. 1986); *see also Perez v. Jupada Enters., Inc.*, No. 10 CIV. 3118, 2011 WL 501601, at

*2 (S.D.N.Y. Feb. 14, 2011) (collecting cases in which courts have "entered protective orders restricting parties who have requested . . . information [in non-party personnel files] from disseminating it to persons other their counsel and agents of their counsel"). Such limitations are appropriately imposed where necessary to protect legitimate privacy concerns. This matter—an employment discrimination action involving health care providers and claims of domestic violence, mishandling of prescription medications, sexual misconduct, and patient abandonment—is precisely the kind of case in which such privacy concerns are implicated.

Further, the additions proposed by Plaintiff would render significant portions of the proposed protective order superfluous. For example, the proposed protective order clearly and carefully delineates the parties to whom confidential discovery materials may be disclosed and limits the manner in which such materials may be copied. (*Compare* Dkt. 59-1 at ¶ 6, *with* Dkt. 60-1 at ¶ 6). These provisions would serve no function if the parties could nevertheless freely use confidential material for any purpose throughout the course of the litigation. The sensitive materials at issue in this case warrant a greater degree of protection than that proposed by Plaintiff.

The Court therefore finds that there is good cause to enter a protective order largely consistent with the form proposed by Defendant. The Court notes, however, that Defendant has proposed that the parties be required to "confer in good faith" prior to filing a document with the Court that has been designated by the other party as containing confidential material. (Dkt. 60-1 at ¶ 10). While the Court agrees that such a pre-filing conferral is desirable under normal circumstances, it will not impose

- 8 -

such conferral as an absolute pre-filing requirement. The Court cannot anticipate every circumstance in which a party might need to seek urgent relief, such that pre-filing conferral would not be feasible. Instead, the Court will impose a procedure it has successfully implemented in other cases, whereby the party whose confidential information is at issue is afforded an appropriate opportunity to argue in support of sealing.

## CONCLUSION

The Court finds that there is good cause to enter a protective order in this matter, consistent with its resolution of the parties' dispute regarding the terms thereof as set forth above. A protective order consistent with the Court's rulings will follow.

**SO ORDERED.**

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: Rochester, New York
July 27, 2026